IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LOLETHA HALE LEWIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:18-CV-5917-WMR |
| MARRIOTT INTERNATIONAL, INC.; | : | |
| AIMBRIDGE HOSPITALITY, LLC; | : | |
| GARRISON NORTHWEST ATLANTA | : | |
| OPCO, LLC; and ERNEST BRENT | : | |
| FUTO d/b/a Swinging Atlanta; | : | |
| | : | |
| Defendants. | : | |

## SECOND AMENDED COMPLAINT

Plaintiff LOLETHA HALE LEWIS files this second amended complaint against Defendants MARRIOTT INTERNATIONAL, INC.; AIMBRIDGE HOSPITALITY, LLC; GARRISON NORTHWEST ATLANTA OPCO, LLC; and ERNEST BRENT FUTO d/b/a Swinging Atlanta. Allegations in each paragraph of this Complaint are incorporated into each claim, count, and cause of action.

## JURISDICTION, VENUE AND PARTIES

1.

This is a civil rights, tort, and contract action based on the United States

Constitution; the Georgia Constitution; 42 U.S.C. §§ 1981, 1982, 1985(3), and 1988; Titles 13 and 51 of the Official Code of Georgia, and any other applicable provisions of law. Plaintiff's claims are based on Defendants' violations of Plaintiff's legal rights to contract, to lease property, and to privacy; breach of contract; breach of a legal duty; violation of a covenant of quiet enjoyment; negligence; malicious prosecution; assault; and intentional infliction of emotional distress.

2.

Plaintiff LOLETHA HALE LEWIS is an adult Black female citizen of the United States residing in the Northern District of Georgia.

3.

Defendant MARRIOTT INTERNATIONAL, INC. ("MARRIOTT") is a foreign corporation for profit created under the laws of the State of Delaware, with a principal office in the State of Maryland, and registered to conduct business in the State of Georgia. MARRIOTT may be and was served with process through its registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

4.

Defendant AIMBRIDGE HOSPITALITY, LLC ("AIMBRIDGE") is a foreign corporation for profit created under the laws of the State of Texas, with

principal offices in the State of Texas, and registered to conduct business in the State of Georgia. AIMBRIDGE may be and was served with process through its registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

5.

Defendant GARRISON NORTHWEST ATLANTA OPCO, LLC ("GARRISON") is a foreign corporation for profit created under the laws of the State of Delaware, with a principal office in the State of New York, that was registered to conduct business in the State of Georgia. Defendant GARRISON waived service of process in this action.

6.

In December 2016, GARRISON owned the Atlanta Marriott Northwest at Galleria ("Marriott Galleria"), a hotel located at 200 Interstate North Parkway, S.E., Atlanta, Cobb County, Georgia that leases hotel rooms to the general public.

7.

In December 2016, MARRIOTT and GARRISON were parties to a franchise agreement whereby these defendants jointly operated, controlled, and conducted business at the Marriott Galleria while these defendants shared financial interests in this hotel.

3

8.

In December 2016, MARRIOTT was entitled to and did use its trade name in the name of the hotel; managed the booking and reservation system for leasing rooms to hotel guests; received a percentage of hotel room rental fees and additional compensation for its hotel services; conducted quality control inspections; and participated in other aspects of hotel operations at the Marriott Galleria.

9.

AIMBRIDGE is a hotel management company that hired, employed, and managed the hotel staff at the Marriott Galleria and other hotel properties affiliated with MARRIOTT.

10.

In December 2016, GARRISON and AIMBRIDGE were parties to a contractual agreement whereby AIMBRIDGE received a percentage of hotel room rental fees and additional compensation to provide hotel management services and employment of the hotel staff at the Marriott Galleria.

11.

MARRIOTT, GARRISON, and AIMBRIDGE (hereinafter collectively referred to as "HOTEL Defendants") all acted as agents and legal representatives of each other in the management, control, and operation of the Marriott Galleria.

4

12.

HOTEL Defendants all shared in, and received percentages of, the room rental fees and other revenue received from hotel guests at the Marriott Galleria.

13.

Defendant ERNEST BRENT FUTO ("FUTO") is an adult male resident of Hall County, Georgia.  FUTO owned, operated, managed, and received compensation from and through a social club or group known as "Swinging Atlanta" by scheduling parties and events that included consensual sexual activity in Cobb County, Georgia.

14.

On December 30, 2016, FUTO acted and interacted with hotel staff and guests (including Plaintiff) as an agent and legal representative of HOTEL Defendants.

15.

HOTEL Defendants and FUTO all conducted business at the Marriott Galleria prior to and through December 2016.

16.

On December 30, 2016, Jonathan Tabb ("Tabb") was a male security guard performing his official job duties at the Marriott Galleria as an employee, agent, and legal representative of HOTEL Defendants.

17.

On December 30, 2016, Gachuhi Mugo ("Mugo") was a male security guard performing his official job duties at the Marriott Galleria as an employee, agent, and legal representative of HOTEL Defendants.

18.

On December 30, 2016, Marianne Galvis ("Galvis") was a female hotel manager performing her official job duties at the Marriott Galleria as an employee, agent, and legal representative of HOTEL Defendants.

19.

Plaintiff is asserting federal claims and related, supplemental state law claims against the defendants in this legal action. The opposing parties in this legal action include citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

20.

The parties and claims in this legal action are all subject to the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 1367.

21.

All the acts, omissions and events referred to herein occurred or were committed in Cobb County and the Northern District of Georgia. Venue is proper in

this Court pursuant to 28 U.S.C. § 1391 and N.D.Ga. Local Rule 3.1(B).

## BACKGROUND FACTS

22.

HOTEL Defendants collaborated and contracted to set up a "Marriott hotel reservation system" with a website, "800" phone number, and personnel to reserve and lease rooms to hotel guests at "Marriott" hotels, including the Marriott Galleria.

23.

MARRIOTT organized, operated, and managed the Marriott hotel reservation system pursuant to its franchise agreement with GARRISON for the mutual use and benefit of HOTEL Defendants.

24.

AIMBRIDGE negotiated and offered reduced room rates and benefits for guests at the Marriott Galleria who leased hotel rooms as members of designated groups. These reduced group rates were utilized in the Marriott hotel reservation system for the mutual benefit of HOTEL Defendants and the hotel guests.

25.

FUTO organized and managed Swinging Atlanta events at the Marriott Galleria in late December 2016 that involved leasing the entire "king wing" of the hotel, scheduling events, charging fees, and accepting payments to register a

predominately white membership participating in Swinging Atlanta group activities. FUTO contracted with the Marriott Galleria for a reduced group rate for rooms leased by hotel guests affiliated with the Swinging Atlanta group.

26.

A group of predominately Black professionals (the "Professional Group") organized, scheduled, and managed the "Urbansouls 30th New Year's Eve Party" at the Marriott Galleria in late December 2016. In that process, the organizers of this event contracted with the Marriott Galleria for a reduced group rate for rooms leased by hotel guests affiliated with the Professional Group.

27.

Hotel guests affiliated with the Professional Group and Swinging Atlanta were offered and paid the same reduced group rates to lease hotel rooms. HOTEL Defendants were jointly responsible for identifying hotel guests who were entitled to receive a particular group rate and for assigning the guests to their hotel rooms.

28.

Plaintiff used the Marriott hotel reservation system to reserve and lease a hotel room at the Marriott Galleria from December 30, 2016 until January 1, 2017 to attend the Urbansouls 30th New Year's Eve Party.

29.

When Plaintiff reserved her hotel room at the Marriott Galleria, an agent or employee of HOTEL Defendants in the Marriott hotel reservation system mistakenly assumed or concluded that Plaintiff intended to lease the room as a guest affiliated with the Swinging Atlanta group.

30.

When Plaintiff checked in to lease a hotel room at the Marriott Galleria on December 30, 2016, a hotel staff employee of HOTEL Defendants working at the front desk mistakenly assigned Plaintiff to a room on the fifth floor of the king wing of the hotel reserved for the Swinging Atlanta group.

31.

When Plaintiff checked in at the Marriott Galleria on December 30, 2016, she presented her bank card and passport to the front desk clerk. Plaintiff knew that the Marriott Galleria used this information to verify Plaintiff's identity.

32.

Plaintiff never stated, claimed, suggested, or inferred that she was affiliated with Swinging Atlanta or that Plaintiff wanted to receive a reduced group rate as a member of Swinging Atlanta.

9

33.

FUTO approached and spoke to Plaintiff near her room on the fifth floor of the king wing of the hotel. FUTO told Plaintiff that she had to register and pay an additional fee to stay in a hotel room on that floor. In response, Plaintiff confirmed that she had already registered with the hotel and paid for her room, so she was unwilling to pay FUTO any additional fee.

34.

FUTO went to the front desk of the hotel to complain that Plaintiff refused to pay a fee to participate in Swinging Atlanta activities.

35.

A female hotel manager, Galvis, confirmed that Plaintiff was assigned to a hotel room reserved for Swinging Atlanta. However, no hotel manager or front desk employee made any effort to contact Plaintiff or to reassign Plaintiff to another room

36.

Two male security guards, Tabb and Mugo, went to Plaintiff's assigned hotel room without any instructions or supervision from the management or front desk of the hotel. Both security guards unlocked Plaintiff's hotel room door and entered the room without Plaintiff's knowledge or permission.

10

37.

After Plaintiff got out of the hotel room's shower naked, Plaintiff saw both male security guards in the hotel room. Both security guards immediately left the room as Plaintiff yelled and attempted to cover her naked body.

38.

Plaintiff put on pajamas and opened the door to her hotel room. Tabb promptly returned to the hotel room door with FUTO.

39.

Tabb and FUTO both told Plaintiff that she had to move out of her hotel room because she was not supposed to have a room on that floor. FUTO stated that Plaintiff should move because she was not a member of FUTO's group or participating in the group activities.

40.

FUTO and Tabb both accused Plaintiff of deliberately booking a room on a floor reserved for a private group, but FUTO and Tabb both failed and refused to identify Swinging Atlanta as the group that reserved the floor.

41.

FUTO and Tabb both suggested that the hotel would offer Plaintiff an alternative room. However, FUTO admitted that he had no authority to offer

Plaintiff an alternative room because he did not work for the hotel. Tabb could not

offer Plaintiff another room because he had no authority to assign rooms, he had no

training in the room assignment procedures, and he did not even know whether any

alternative rooms were available.

42.

Plaintiff calmly stated that she intended to remain in her hotel room because

she was not disturbing anyone, the hotel had assigned her to that room, and she had

already paid for the room.

43.

FUTO and Tabb collaborated and conspired to provide the local police with

false information so that police officers would remove Plaintiff from her

hotel room on the floor reserved for Swinging Atlanta.

44.

Tabb made a 911 call to the Cobb County Police Department ("CCPD") police

operator for assistance in removing Plaintiff from the Marriott Galleria property.

45.

When Tabb called the CCPD police operator, Tabb gave the police operator

false, fabricated information that Plaintiff needed to be removed from the Marriott

Galleria hotel because she was "belligerent" and "intoxicated."

46.

Officer Zachary Stannard ("Officer Stannard") and Officer Anthony Scrimo ("Officer Scrimo") were male law enforcement officers employed by the Cobb County Police Department ("CCPD"). CCPD dispatched Officer Stannard and Officer Scrimo to the Marriott Galleria in response to Tabb's 911 call.

47.

Mugo met Officer Stannard when he arrived at the Marriott Galleria. While explaining the situation to Officer Stannard, Mugo falsely alleged that Plaintiff was belligerent, yelling at guests, causing a disturbance, "and just acting crazy."

48.

Officer Stannard confirmed that Plaintiff could not be removed from the Marriott Galleria unless an authorized hotel representative confirmed that Plaintiff should be removed from the property.

49.

Officer Scrimo arrived at the hotel to assist Officer Stannard. Tabb, Mugo, Officer Stannard, and Officer Scrimo all met outside Plaintiff's hotel room.

50.

Tabb unlocked and opened the door to Plaintiff's hotel room without her permission. The four (4) male police officers and hotel security guards then forcibly

13

entered Plaintiff's hotel room without identifying themselves beforehand.

51.

Plaintiff told the intruding security guards and police officers to leave the hotel room, but they refused to leave. Plaintiff then confirmed that she was not angry with anyone and she was not causing any disturbance at the hotel.

52.

Officer Stannard and Officer Scrimo asked Plaintiff to produce her driver's license. In response, Plaintiff asked the police officers why they needed to see a driver's license when Plaintiff had not done anything wrong and the police officers already knew Plaintiff's identity as a registered guest at the hotel.

53.

The police officers could not identify any specific act allegedly committed by Plaintiff or any person who allegedly complained about Plaintiff's behavior. Instead, Officer Scrimo stated that the police officers came to the hotel room to investigate an unspecified "business dispute."

54.

Plaintiff had no reason to believe that the police officers had any legal or valid reason to enter the hotel room or to see Plaintiff's driver's license. At that point, Plaintiff stated that she was an attorney.

55.

Plaintiff asked to speak to a police supervisor before producing her driver's license. Officer Stannard threatened to take Plaintiff to jail unless she produced her driver's license and gathered her belongings to leave the hotel.

56.

Plaintiff asked to speak to a hotel manager to confirm whether Plaintiff had to leave the hotel. Officer Stannard granted this request and a hotel manager, Galvis, came to the hotel room to discuss the matter with Plaintiff.

57.

Galvis never mentioned any complaints about Plaintiff's behavior. Instead, Galvis incorrectly stated a) that Plaintiff was responsible for reserving her room as a member of the Swinging Atlanta group, and b) that someone at the hotel had previously offered Plaintiff an alternative room.

58.

Plaintiff explained that she booked the hotel room to attend the New Year's Eve party organized by the Professional Group. Plaintiff also stated that she was a Marriott Rewards member because she customarily leased rooms at Marriott hotels and she had no knowledge of any other group reserving that floor of the hotel.

59.

During this conversation, Galvis and Officer Stannard agreed that Plaintiff should be removed "off the property." However, Galvis failed to give Plaintiff any notice to leave the property.

60.

Officer Stannard told Plaintiff that she would have to leave the hotel room immediately. Plaintiff requested clarification as to whether the hotel was offering Plaintiff an alternative room, but Galvis did not respond to this request.

61.

Officer Stannard promptly arrested Plaintiff, handcuffed her, and charged her with the criminal offense of Obstruction/Hindering Law Enforcement.

62.

When Plaintiff was arrested, she had not violated any of the hotel rules at the Marriott Galleria. Plaintiff was legally entitled to remain in her hotel room or to accept an alternative hotel room.

63.

Plaintiff was not legally obligated to produce her driver's license prior to her arrest because her identity was not in dispute; there was no a criminal investigation; Plaintiff had not been accused of committing any specific criminal or disorderly acts;

the police officers merely asked to see Plaintiff's driver's license without providing a reasonable explanation; and the police officers illegally entered the hotel room.

64.

Police officers and security guards publicly escorted Plaintiff through and out of the Marriott Galleria while she was only wearing pajamas, flip-flops, and handcuffs. Plaintiff was not given an opportunity to put on street clothes or a coat.

65.

Officer Stannard took Plaintiff to a jail where Plaintiff was incarcerated.

66.

Plaintiff was criminally prosecuted for offenses of Disorderly Conduct and Obstruction/Hindering Law Enforcement. Plaintiff would not have been arrested, incarcerated, or prosecuted for these criminal offenses but for the conduct of HOTEL Defendants and the false representations of Tabb and Mugo which misled the police officers to believe that Plaintiff was causing a disturbance at the Marriott Galleria.

67.

Defendants induced the police officers to illegally enter Plaintiff's hotel room, to request Plaintiff's identification; to question Plaintiff about false allegations; to instruct Plaintiff to leave her leased hotel room without any legal notice or justification; to arrest Plaintiff while she was asking for an alternative hotel room;

17

and to prosecute Plaintiff for criminal offenses.

68.

Defendants were all financially motivated to remove Plaintiff from her hotel room to accommodate FUTO and Swinging Atlanta. Defendants all received monetary compensation and financial benefits by providing a venue for Swinging Atlanta to fully occupy the hotel floors where they could freely and comfortably engage in their social events and sexual activities.

## COUNT ONE:  CIVIL RIGHTS VIOLATION OF RIGHTS TO CONTRACT AND LEASE PROPERTY

69.

Plaintiff has a right to equal protection of the laws, including the same right to contractually lease and hold property as is enjoyed by white citizens. These rights are secured by the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. §§ 1981 and 1982, and Paragraph II of the Bill of Rights in the Georgia Constitution.

70.

HOTEL Defendants and FUTO acted, collaborated, and conspired to remove Plaintiff from the hotel room that she contracted to lease and hold. Toward that end, HOTEL Defendants and FUTO treated Plaintiff in a manner that departed from the Marriott Galleria's and Swinging Atlanta's procedural norms for leasing rooms to,

18

and interacting with, hotel guests by:

a)      making no effort to determine whether an alternate room was available for Plaintiff to occupy;

b)      failing to communicate with or assign a hotel manager or front desk employee to contact Plaintiff to inform her of the reservation error, apologize for the inconvenience, and offer Plaintiff another room (if a room was available);

c)      allowing hotel security guards to use their own judgment to track down Plaintiff, enter her room without permission, and instruct Plaintiff that she needed to make arrangements to lease an alternative room;

d)      failing to apologize for barging into Plaintiff's hotel room while she was naked and coming out in the bathroom;

e)      assuming that Plaintiff deliberately lied to lease a room on a floor reserved for Swinging Atlanta, despite the reasonable likelihood that the Marriott hotel reservation system and/or the hotel's front desk clerk were responsible for the error and despite Plaintiff's statement that she was affiliated with another group that was receiving the same reduced group rate;

f)      making no effort to determine whether Plaintiff was affiliated with another group that was receiving the same reduced group rate;

g)      calling the local police to intervene in the dispute with Plaintiff over an

erroneous room assignment;

h)    conspiring to provide and providing false information to police officers so that the officers would remove Plaintiff from her hotel room;

i)    failing to use a manager or front desk employee to contact Plaintiff to discuss her room assignment before police officers entered her room;

j)    forcibly entering Plaintiff's hotel room without identifying themselves;

k)    terminating Plaintiff's room rental agreement and evicting her from the hotel even though she fully paid for the room and did not violate any hotel rules;

l)    telling a police officer to remove Plaintiff from her hotel room without informing Plaintiff that she had to leave; and

m)    failing to tell Plaintiff that she would not be offered an alternative room before she was handcuffed, arrested, and removed from the hotel by police officers.

71.

HOTEL Defendants and FUTO would not have treated a white hotel guest in this manner under the same or comparable circumstances, and HOTEL Defendants never treated any white hotel guest in this manner.

72.

Defendants violated, conspired to violate, impaired, and denied Plaintiff's rights to the equal protection and benefit of the laws in making and enforcing a

contract to lease and hold property at the Marriott Galleria.

73.

Defendants are all jointly and severally liable to Plaintiff for this violation of her civil rights.

## COUNT TWO:  VIOLATION OF RIGHT TO PRIVACY

74.

Plaintiff has a right to privacy and a cause of action for an invasion of her privacy secured and protected by Georgia law.

75.

Tabb and Mugo violated Plaintiff's right to privacy and invaded her privacy by forcibly and illegally entering and remaining in Plaintiff's hotel room without her permission on two (2) separate occasions.

76.

Tabb and FUTO violated Plaintiff's right to privacy and invaded her privacy by fraudulently inducing police officers to enter and remain in Plaintiff's hotel room without her permission.

77.

Defendants are all jointly and severally liable to Plaintiff for this violation of her right to privacy and invasion of her privacy.

## COUNT THREE:  BREACH OF CONTRACT

78.

Plaintiff and HOTEL Defendants entered into a binding contract whereby Plaintiff leased a private hotel room at the Marriott Galleria.

79.

As consideration for the contract, Plaintiff agreed to pay and paid HOTEL Defendants a monetary fee to lease a private hotel room at the Marriott Galleria for two days commencing on December 30, 2016.

80.

HOTEL Defendants accepted Plaintiff's payment for the hotel room. HOTEL Defendants assigned Plaintiff to a specific hotel room. Plaintiff accepted the assigned room on the assigned floor of the hotel.

81.

HOTEL Defendants breached their contract with Plaintiff by invading the hotel room occupied by Plaintiff, forcibly removing Plaintiff from the hotel room, and still retaining the rental fee that Plaintiff paid for the hotel room.

82.

Plaintiff detrimentally relied on her contract with HOTEL Defendants to lease a private hotel room at the Marriott Galleria so that Plaintiff could attend the

22

Professional Group's New Year's Eve party at that hotel. Plaintiff was unable to attend this party or engage in related social and professional activity with other members of the Professional Group because Plaintiff was removed from the hotel.

83.

HOTEL Defendants are jointly and severally liable to Plaintiff for this breach of contract.

## **COUNT FOUR:  HOTEL BREACH OF DUTY**

84.

HOTEL Defendants invited the general public to enter the Marriott Galleria to transact business and lease hotel rooms. Plaintiff lawfully entered the Marriott Galleria as a business invitee of HOTEL Defendants.

85.

HOTEL Defendants had a duty to protect Plaintiff and to provide Plaintiff with a private hotel room as a business invitee. HOTEL Defendants specifically had a duty to protect Plaintiff from invasions of her privacy in her hotel room and false allegations that Plaintiff engaged in disorderly conduct or inappropriate behavior as an excuse to remove Plaintiff from her hotel room.

86.

HOTEL Defendants were responsible for establishing, administering, and

23

enforcing rules, regulations, customs, policies, practices, and procedures for the hotel staff at the Marriott Galleria.

87.

HOTEL Defendants failed to implement appropriate rules, regulations, customs, policies, practices, and procedures at the Marriott Galleria to assure that Plaintiff was assigned to a safe, private hotel room without being subject to threats and invasions of her privacy by hotel guests, security guards, or police officers.

88.

HOTEL Defendants were responsible for training, supervising, disciplining, hiring, and firing hotel employees and agents at the Marriott Galleria.

89.

HOTEL Defendants failed to adequately and properly train and supervise its agents, employees, contractors, representatives, and workers, including the person in the Marriott hotel reservation system who reserved Plaintiff's room; the front desk person at the Marriott Galleria who assigned Plaintiff to her hotel room; two (2) hotel security guards (Tabb and Mugo); and a hotel manager (Galvis).

90.

HOTEL Defendants failed to adopt, implement, or utilize appropriate supervisory, training, and disciplinary measures or procedures to prevent the

unlawful and tortious acts committed by Tabb, Mugo, and Galvis. These unlawful and tortious acts included, but were not limited to:

a)      reserving a hotel room for Plaintiff as a member of the Swinging Atlanta group;

a)      assigning Plaintiff to a hotel room on a floor reserved for members of the Swinging Atlanta group and its sexual activities;

b)       assuming that Plaintiff deliberately reserved a hotel room on a floor reserved for members of the Swinging Atlanta group;

c)      allowing FUTO to exercise power and authority over hotel staff and hotel guests as an agent of the Marriott Galleria;

d)      assigning security guards to remove Plaintiff from her hotel room instead of leaving her alone or arranging to lease Plaintiff a comparable room;

e)      granting security guards unsupervised authority to contact the police and fabricate allegations justify removing Plaintiff from her hotel room; and

f)      granting security guards unsupervised authority to collaborate and conspire with FUTO to remove Plaintiff from her hotel room.

91.

Tabb and Mugo intentionally, wantonly, and negligently fabricated and stated allegations that Plaintiff was belligerent, intoxicated, and disorderly as part of their

25

scheme to remove Plaintiff from her hotel room.

92.

HOTEL Defendants breached their legal duty to protect Plaintiff; to provide Plaintiff with a private hotel room after Plaintiff leased for the room; and to avoid making false allegations that jeopardized Plaintiff's security and her room rental.

93.

HOTEL Defendants are jointly and severally liable to Plaintiff for this breach of duty.

**COUNT FIVE:  BREACH OF COVENANT OF QUIET ENJOYMENT**

94.

HOTEL Defendants operated the Marriott Galleria and leased hotel rooms by a general warranty that these defendants had good title to the property and authority to provide an unencumbered lease of the premises.

95.

Plaintiff acquired a covenant of quiet enjoyment in the Marriott Galleria hotel room when she leased the room from HOTEL Defendants.

96.

HOTEL Defendants breached their covenant of quiet enjoyment with Plaintiff by removing her from the hotel room.

97.

HOTEL Defendants are jointly and severally liable to Plaintiff for this breach of the covenant of quiet enjoyment.

## COUNT SIX:  NEGLIGENCE

98.

HOTEL Defendants were negligent in their conduct described and set forth herein. The negligence of HOTEL Defendants specifically includes:

a)      reserving a hotel room for Plaintiff that mistakenly identified her as a member of the Swinging Atlanta group;

b)      assigning Plaintiff to a hotel room on a floor that was exclusively reserved for members of the Swinging Atlanta group;

c)      acting on a false, irrational assumption that Plaintiff deliberately reserved her room as a member of the Swinging Atlanta group;

d)      providing false information to law enforcement officers as a strategy to remove Plaintiff from her hotel room;

e)      failing to utilize any management or front desk employee to determine whether an alternative hotel room was available for Plaintiff;

f)      failing to utilize any hotel manager or front desk employee to contact Plaintiff about moving to an alternative hotel room;

g)     allowing FUTO to act as an agent of the Marriott Galleria;

h)     allowing security guards to assist FUTO in orchestrating the removal of Plaintiff from her hotel room without any supervision, instructions, or assistance from hotel management or the front desk;

i)     initiating a confrontation with Plaintiff by entering her hotel room without prior identification, prior notice, permission, or any legal justification; and

j)     telling a police officer to remove Plaintiff from the hotel without giving Plaintiff notice to leave or clarifying whether she could move to another room.

99.

FUTO was negligent in his conduct described and set forth herein. The negligence of FUTO specifically includes:

a)     acting on a false, irrational assumption that Plaintiff deliberately reserved her room as a member of the Swinging Atlanta group; and

b)     collaborating and conspiring with a hotel security guard rather than communicating with appropriate hotel staff to remove Plaintiff from her hotel room.

100.

Tabb and Mugo violated a Georgia criminal statute, O.C.G.A. § 16-10-26, by falsely reporting that Plaintiff was committing the criminal offense of Disorderly Conduct at the Marriott Galleria. This false report of this crime is negligence *per s*e.

101.

Defendants are all jointly and severally liable to Plaintiff for this negligence.

## COUNT SEVEN:  MALICIOUS PROSECUTION

102.

Tabb, Mugo, and FUTO intentionally collaborated, conspired, and acted to provide false information to police officers to maliciously initiate the arrest and criminal prosecution of Plaintiff.

103.

Based on the false allegations of Tabb and Mugo, Plaintiff was formally charged and prosecuted for Disorderly Conduct, a criminal offense.

104.

There was no probable cause or supporting evidence for the prosecution of this offense. At trial, the presiding judge granted Plaintiff a directed verdict of acquittal on this charge because there was no evidence to support it.

105.

After Plaintiff was arrested, Defendants continued to pursue and facilitate the malicious prosecution of Plaintiff to justify the unlawful and unjustified intrusion into Plaintiff's hotel room and the resulting damage to Plaintiff.

106.

Defendants are all jointly and severally liable to Plaintiff for this malicious prosecution.

## COUNT EIGHT:  ASSAULT

107.

Tabb and Mugo failed to identify themselves before they unlocked and entered Plaintiff's hotel room without prior notice, Plaintiff's permission, or any legal justification while she was in the shower. This event intentionally placed Plaintiff in reasonable apprehension of receiving a violent injury in violation of O.C.G.A. § 16-5-20, a criminal statute.

108.

Tabb and Mugo failed to identify themselves before they unlocked and entered Plaintiff's hotel room without prior notice, Plaintiff's permission, or any legal justification while accompanied by police officers. This event intentionally placed Plaintiff in reasonable apprehension of receiving a violent injury in violation of O.C.G.A. § 16-5-20, a criminal statute.

109.

HOTEL Defendants are jointly and severally liable to Plaintiff for these assaults.

30

## COUNT NINE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110.

Defendants intentionally inflicted emotional distress on Plaintiff through the intentional, reckless, extreme, and outrageous conduct described and set forth herein, including the conduct of Tabb, Mugo, Galvis, and FUTO in:

a)      providing false information to law enforcement officers as a strategy to remove Plaintiff from her hotel room;

b)      initiating a confrontation with Plaintiff by entering her hotel room without prior identification, prior notice, permission, or any legal justification;

c)      telling a police officer to remove Plaintiff from the hotel without giving Plaintiff notice to leave or clarifying whether she could move to another room; and

d)      initiating the arrest and criminal prosecution of Plaintiff.

111.

Defendants' conduct caused Plaintiff to suffer severe emotional distress, humiliation, anxiety attacks, sleeplessness, nausea, and profuse sweating. Plaintiff received prolonged medical and psychological treatment for this trauma.

112.

HOTEL Defendants' conduct was even more outrageous and egregious because of their duty to provide a comfortable, safe environment for hotel guests and

31

their special relationship with Plaintiff as a guest at the Marriott Galleria hotel.

113.

Defendants are all jointly and severally liable to Plaintiff for this intentional infliction of emotional distress.

## INJURIES & DAMAGES

114.

Plaintiff was physically bruised by handcuffs that were placed on Plaintiff's wrists to restrain her during the arrest.

115.

Defendants' conduct caused Plaintiff to experience pain, suffering, physical discomfort, and emotional trauma, specifically including shock, fright, humiliation, mental anguish, humiliation, anxiety attacks, sleeplessness, and nausea.

116.

Defendants' conduct caused Plaintiff to suffer financial damages that include loss of income, a hotel fee, a bail bond fee, attorney's fees, and legal expenses.

117.

Defendants' conduct caused Plaintiff to lose the benefit of quiet enjoyment of the leased hotel room, social interaction with her peers, and professional networking with other members of the Professional Group.

118.

Members of the Professional Group learned that Plaintiff was arrested at the Marriott Galleria prior to the New Year's Eve party.

119.

Defendants' conduct caused Plaintiff to receive a criminal history record that jeopardizes her career; damages her professional reputation; and compromises her ability to securing clients and employment.

120.

Defendants' conduct caused Plaintiff to be incarcerated, deprived of her liberty, and faced with a criminal penalty of imprisonment and a fine.

121.

The tortious conduct, acts, omissions, motives, and intent of Defendants constitute aggravating circumstances for which Plaintiff should recover additional, punitive, and exemplary damages from Defendants.

122.

Plaintiff is entitled to recover her attorney's fees, court costs, and litigation expenses associated with vindicating her civil rights and pursuing her civil rights claims in this action from Defendants pursuant to 42 U.S.C. § 1988.

123.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to recover her attorney's fees, court costs, and litigation expenses in this action from Defendants pursuant to O.C.G.A. § 13-6-11 and any other applicable provisions of law.

**WHEREFORE**, Plaintiff LOLETHA HALE LEWIS prays for a TRIAL BY JURY and an award of the following damages and relief from Defendants:

(a)     Actual and compensatory damages in excess of $75,000;

(b)     Additional, exemplary, and punitive damages; and

(c)     Litigation expenses, costs, and reasonable attorney's fees that Plaintiff incurs related to this action; and

(d)     Such other and further relief as the Court deems just and proper.

/s/  *James W. Howard*
James W. Howard
Georgia Bar No. 370925
jhoward@howardfirm.com

/s/  *Sharon Effatt Howard*
Sharon Effatt Howard
Georgia Bar No. 371275
showard@howardfirm.com

/s/ *Leif A. Howard*
Leif A. Howard
Georgia Bar No. 132778
lhoward@howardfirm.com

ATTORNEYS FOR PLAINTIFF

THE HOWARD LAW FIRM, P.C.
Suite 200, Kyleif Center
1479 Brockett Road
Tucker, Georgia 30084
(770) 270-5080
(770) 270-5033 (fax)

## CONSENT TO FILING

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the defendants hereby

consent to the filing of this *Second Amended Complaint*.

/s/ *Neal C. Scott*
Neal C. Scott
Georgia Bar No. 632180
Attorney for Defendants Marriott, Aimbridge, and Garrison
Law Office of Terry-Dawn Thomas
1001 Summit Blvd., Suite 1750
Atlanta, Georgia 30319
(404) 705-5848
neal.scott@zurichna.com

/s/ *Lloyd E. N. Hall*
Lloyd E. N. Hall
Georgia Bar No. 319150
Attorney for Defendant Futo
P.O. Box 81832
Atlanta, Georgia 30366
(770) 454-9571
LloydHall@att.net

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing *Second Amended Complaint* with the Clerk of Court for filing and uploading to the CM/ECF system, which will automatically send e-mail notification of such filing to the appropriate parties and opposing counsel of record, including:

Neal C. Scott, Esq.                      neal.scott@zurichna.com
Law Office of Terry-Dawn Thomas
1001 Summit Blvd.
Suite 1750
Atlanta, GA 30319

Lloyd E. N. Hall                          LloydHall@att.net
P.O. Box 81832
Atlanta, GA 30366

This 30th day of September, 2020.

/s/  *James W. Howard*
James W. Howard
Attorney for Plaintiff
Georgia Bar No. 370925

THE HOWARD LAW FIRM, P.C.
Suite 200, Kyleif Center
1479 Brockett Road
Tucker, Georgia 30084
(770) 270-5080
(770) 270-5033 (fax)
jhoward@howardfirm.com

36